NADER TAVAKOLI,

      Plaintiff,

v.

VLADISLAV DORONIN, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Carl Johan Eliasch's and Sherway Group Limited's Combined Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 96]. Plaintiff, Nader Tavakoli, filed a Response [ECF No. 100], along with exhibits in support [ECF No. 103]; to which Defendants filed a Reply [ECF No. 104]. The Court has carefully considered the Complaint [ECF No. 1], the parties' written submissions and exhibits, the record, and applicable law. For the reasons that follow, the Motion is denied.

## I.      BACKGROUND

This case arises out of the acquisition of Aman Resorts, a luxury hotel chain. (*See generally* Compl.). Plaintiff, an investor, financial advisor, and corporate restructuring expert, alleges that after he served as one of the principal architects of the transaction, Defendants conspired to cut him out of the deal. (*See id.* ¶¶ 1–2). While the Complaint details the alleged scheme, only the parties and factual allegations relevant to the Motion are discussed below.

### A.      The Aman Resorts Acquisition

In 2013, Plaintiff, a New Jersey resident (*see id.* ¶ 11), met Omar Amanat at a dinner in New York (*see id.* ¶ 22). Amanat had entered a contract to purchase Aman Resorts from DLF

Group Hospitality Limited ("DLF"), but he was having trouble raising capital. (*See id.* ¶ 23). Amanat asked Plaintiff to help him with the transaction. (*See id.* ¶¶ 23–24).

Plaintiff reached out to his contacts about the opportunity. (*See id.* ¶ 28). One of Plaintiff's contacts, Defendant Alan Djanogly, informed Plaintiff that a billionaire real estate developer, Defendant Vladislav Doronin, was interested in funding the Aman Resorts transaction. (*See id.*). Doronin is a citizen of Switzerland, but has a residence and conducts business in Miami, Florida. (*See id.* ¶ 12). Djanogly resides in England. (*See id.* ¶ 14).

In December 2013, Plaintiff had several meetings with Doronin and Amanat to discuss the terms of a potential deal with DLF. (*See id.* ¶¶ 30–31). They discussed an alliance between Doronin, Plaintiff, and Amanat's entity for the transaction, Peak Hotels & Resorts Limited ("PHRL"). (*See id.* ¶ 32).

On December 25, 2013, Doronin entered into a letter agreement with Peak Venture Partners LLC (another entity controlled by Amanat), for the purchase of Silverlink Resorts Limited from DLF (the "2013 Letter Agreement"). (*See id.* ¶ 36). Silverlink Resorts Limited owned Aman Resorts. (*See id.*). The 2013 Letter Agreement provided that upon closing the transaction, the shares of Aman Resorts would be sold to a newly-formed company which would be owned by a joint venture entity. (*See id.*). The joint venture that came to own Aman Resorts was Peak Hotels and Resorts Group Limited ("PHRGL"). (*See id.* ¶ 6). Doronin promised Plaintiff would play a key role in the joint venture after closing and he would be "treated well" for finding the deal, seeing it through to closing, and any work thereafter. (*Id.* ¶ 35).

**B.     Plaintiff's Compensation Agreements and Appointment as Director**

On January 23, 2014, Amanat, and his affiliates, PHRL and PHRGL, signed an agreement with Plaintiff setting forth Plaintiff's compensation for advising on the deal (the "Tavakoli Agreement").  (*See id.* ¶¶ 45, 97).   Under the Tavakoli Agreement, Plaintiff's compensation included the equivalent of an 0.8% equity interest in PHRGL, a seat on the Board of PHRGL, and half of the money PHRL received from PHRGL.  (*See id.* ¶ 46).

The Aman Resorts transaction closed on February 8, 2014.  (*See id.* ¶ 52).  PHRGL, which came to own Aman Resorts, was governed by a Shareholders' Agreement.  (*See id.* ¶ 57).  The Shareholders' Agreement created four Board of Directors seats, with two directors to be appointed by PHRL (Amanat's entity) and two to be appointed by Tarek Investments Limited ("TIL") (Doronin's entity).  (*See id.* ¶¶ 61–62).  It provided that PHRL's first two directors would be Plaintiff and Amanat, and TIL's first two directors would be Doronin and Djanogly.  (*See id.*).

In addition, Schedule Seven of the Shareholders' Agreement sets forth the mechanism by which Plaintiff would be paid: Plaintiff's incentive compensation would be paid by PHRL, which would indemnify PHRGL for any compensation claims.  (*See id.* ¶¶ 58–59).  Plaintiff also entered into an agreement with PHRGL that covered his compensation for serving on the Board of Directors (the "Director Compensation Agreement").  (*See id.* ¶¶ 63, 100).

**C.     The Conspiracy to Oust Plaintiff from the Deal**

Unbeknownst to Plaintiff, Doronin had been planning to cut Plaintiff and Amanat out of the deal after closing.  (*See id.* ¶¶ 48–54).  Part of Doronin's scheme was accomplished through his long-time friend, Defendant Carl Johan Eliasch, and an entity Eliasch controls, Defendant

Sherway Group Limited ("Sherway"). (*See id*. ¶¶ 15, 69). Eliasch is a citizen of Sweden and resides in London. (*See id*. ¶ 15). Sherway is a corporation with its registered office in the British Virgin Islands. (*See id*. ¶ 16).

In March 2014, Eliasch and Sherway agreed to help Doronin accomplish the ouster of Plaintiff from PHRGL. (*See id*. ¶ 148). Doronin knew PHRL needed funds to finance its portion of an upcoming capital call. (*See id*. ¶ 69). Realizing PHRL was in a vulnerable position, Doronin directed Eliasch to offer to provide PHRL with a $50 million loan in exchange for PHRL appointing him to one of its two PHRGL Board seats. (*See id*. ¶¶ 69–70).

Amanat agreed to give up his seat to Eliasch in exchange for the loan. (*See id*.). To persuade Amanat to give up his Board seat, Eliasch falsely represented to Amanat that he had no personal relationship with Doronin. (*See id*. ¶ 71). Eliasch made similar misrepresentations to Plaintiff on telephone calls and at a meeting in London. (*See id*. ¶ 72). Eliasch utilized Sherway as his investment vehicle to invest in PHRL in exchange for his seat on the PHRGL Board. (*See id*. ¶ 16).

In April 2014, Defendants conspired to use Doronin's new control over the PHRGL Board to remove Plaintiff as a director and eliminate his interests in Aman Resorts. (*See id.* ¶ 149). Doronin's scheme was carried out at a Board of Directors meeting held in Miami, Florida on April 22, 2014. (*See id.* ¶ 73). Eliasch stayed at Doronin's home in Miami for several days before the Board meeting so they could coordinate any last-minute changes to the plan. (*See id.* ¶ 80). Meetings were held with Eliasch prior to the Board meeting to ensure his vote reflected Doronin's

directions. (*See id.*). The Board presentation was also shared with Eliasch in advance of the meeting, and his comments were incorporated into a new version. (*See id.*).

**D.    The Miami Board Meeting and this Action**

At the Board meeting in Miami, Defendants carried out their plan by causing the PHRGL Board to approve two proposals: (1) a $200 million capital call, and (2) the cancellation of Schedule Seven to the PHRGL Shareholders' Agreement. (*See id.* ¶¶ 82–83, 103). Eliasch voted in favor of the capital call but abstained from the vote on Schedule Seven, which effectively was a vote in favor of eliminating Schedule Seven. (*See id.* ¶¶ 82–83). By eliminating Schedule Seven, the Board cancelled incentive payments (including asset management fees and carried profit interests) owed to PHRL under Schedule Seven, a portion of which was to be directed to Plaintiff under the Tavakoli Agreement. (*See id.* ¶¶ 7, 103). In addition, the $200 million capital call drained PHRL of its assets, making it impossible for PHRL to satisfy its payment obligations to Plaintiff. (*See id.* ¶¶ 84, 103). Thus, the actions taken at the Miami Board meeting caused a breach of the Tavakoli Agreement. (*See id.* ¶¶ 102–103, 107).

After announcing the Board would not abide by Schedule Seven, Doronin threw three dollars on the table to demonstrate that was all Plaintiff and PHRL would receive as compensation. (*See id.* ¶ 82). These actions approved by the Board were not permitted by the Shareholders' Agreement. (*See id.* ¶ 85).

After the Board meeting, Doronin repeatedly assured Plaintiff he would receive the compensation that was due to him for his work on the Aman Resorts transaction. (*See id.* ¶ 93). Plaintiff ultimately concluded that Doronin would not pay him and filed this action. (*See id.* ¶¶

10, 95). Plaintiff's Complaint contains claims for tortious interference with a contract (Count I); fraud (Count II); negligent misrepresentation (Count III); and civil conspiracy (Count VI) against Defendants, Doronin, TIL, Djanogly, Eliasch, and Sherway.[1] (*See id.* ¶¶ 96–152).

### E.    Jurisdictional Defenses and Additional Facts

Defendants Eliasch and Sherway seek dismissal for lack of personal jurisdiction.[2]  The parties' jurisdictional discovery produced facts the Court may consider in determining whether Eliasch and Sherway are subject to jurisdiction.[3]

Doronin and Amanat signed the 2013 Letter Agreement regarding the purchase of Aman Resorts in Miami, Florida.  (*See* 2017 Doronin Dep. 86:2–20).  At his deposition, Eliasch confirmed: (1) he has a 100% ownership interest in Sherway (*see* Pl.'s Eliasch Dep. 9:18–20); (2) Eliasch becoming a director of PHRGL was a condition of Sherway investing in PHRL (*see id.* 16:25–17:3); (3) prior to the April 22, 2014 Board meeting, Eliasch had a dinner meeting in Miami with Doronin and the former Chairman of Aman Resorts regarding "matters relat[ed] to Aman Resorts" (*id.* 27:9–25 (alteration added)); (4) Eliasch received the Board presentation prior to the

---

[1] Plaintiff also alleges unjust enrichment (Count IV) and *quantum meruit* (Count V) claims against Defendants Doronin and TIL, which are not relevant to the instant Motion.

[2] The parties completed jurisdictional discovery before the Motion was filed.  (*See* Joint Notice of Conclusion of Jurisdictional Discovery [ECF No. 94]).

[3] The relevant submissions include: Mot., Ex. 1, Affidavit of Sherway Group Limited [ECF No. 96-1] ("Sherway Aff."); *id.*, Ex. 2, Affidavit of Carl Johan Eliasch [ECF No. 96-2] ("Eliasch Aff."); Resp., Ex. 1, May 2, 2017 Deposition of Vladislav Doronin [ECF No. 103-1] ("2017 Doronin Dep."); *id.*, Ex. 2, Plaintiff's excerpts of Deposition of Carl Johan Eliasch [ECF No. 100-2] ("Pl.'s Eliasch Dep."); *id.*, Ex. 3, Draft April 22, 2014 Board Presentation  [ECF No. 103-2] ("Draft Presentation"); *id.*, Ex. 4, Final April 22, 2014 Board Presentation [ECF No. 100-4] ("Final Presentation"); *id.*, Ex. 5, Declaration of Joseph Gallagher [ECF No. 100-5] ("Gallagher Decl."); Reply, Ex. A, Defendants' excerpts of Deposition of Carl Johan Eliasch [ECF No. 104-1] ("Defs.' Eliasch Dep."); and *id.*, Ex. B, December 18, 2018 Deposition of Vladislav Doronin [ECF No. 104-2] ("2018 Doronin Dep.").

April 22 Board meeting (*see id.* 38:11–19); (5) Eliasch abstained from the vote on the cancellation of Schedule Seven during the Board meeting (*see id.* 73:6–8); and (6) Eliasch voted to approve a $150 million capital call, in addition to the earlier $50 million capital call that had to be satisfied within 10 business days (*see id.* 93:11–95:5). Plaintiff also submitted two versions of the presentation made at the Miami Board meeting: a draft presentation, calling for a $60 million capital call (*see* Draft Presentation); and the final presentation that was given at the Board meeting, calling for a $200 million capital call. (*See* Final Presentation; *see also* Gallagher Decl. ¶¶ 3–4).

Sherway is British Virgin Islands corporation and has its registered office in the British Virgin Islands. (*See* Sherway Aff. ¶¶ 2–3). Sherway does not have any offices in Florida; it does not have any employees, agents, or representatives in Florida; and it does not have a bank account, own any real property, or pay taxes in Florida. (*See id.* ¶¶ 4–8). In addition, Sherway is not, and has never been, a member of any board of directors and Sherway did not, through an agent or otherwise, attend the PHRGL Board meeting in Miami on April 22, 2014. (*See id.* ¶¶ 9–10).

Eliasch is a Swedish citizen living in London, England. (*See* Eliasch Aff. ¶ 3). He does not own any business, have any offices, or have any representatives or agents in Florida. (*See id.* ¶¶ 4–6). He does not have a bank account in Florida, own any real property in Florida, or pay taxes in Florida. (*See id.* ¶¶ 7–9).

To rebut Plaintiff's conspiracy allegations, Defendants present Eliasch's testimony that he is "an independent director," and "[t]here was absolutely no implied voting direction that [he] had to follow from Mr. Amanat" regarding how to vote at the April 22, 2014 Board meeting. (Defs.' Eliasch Dep. 46:7–10 (alterations added)). Eliasch states he abstained from the Schedule Seven

vote because he told Amanat he "would not get involved in any issues which related to him and Mr. Doronin directly." (*Id.* 49:24–50:3). Eliasch also contends he did not have "any agreements" or "informal understandings" with Doronin related to Aman Resorts at the time of the Board meeting. (*Id.* 90:22–91:4). Doronin states he never discussed "cutting Mr. Aman[at] [sic] out of the Aman deal with Mr. Eliasch[.]" (2018 Doronin Dep. 31:25–32:4 (alterations added)).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. In the case of a non-resident defendant, a federal court may properly exercise personal jurisdiction only if the requirements of the relevant state long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999) (citing *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)).

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Id.* (citing *Electro Eng'g Prods. Co. v. Lewis*, 352 So. 2d 862, 864 (Fla. 1977)). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). If a plaintiff pleads sufficient facts to support the exercise of personal jurisdiction, the burden shifts to the defendant to make a prima facie showing of the inapplicability of the state's long-arm statute. *See Future Tech. Today,*

*Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam) (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).

If the defendant satisfies its burden, the burden shifts to the plaintiff to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Id.* (citation omitted). "The district court must construe all reasonable inferences in the light most favorable to the plaintiff when dealing with conflicting evidence." *Peruyero*, 83 F. Supp. 3d at 1287 (citing *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010)) (other citation omitted).

## III.    ANALYSIS

Defendants assert the Court lacks personal jurisdiction over Eliasch, a London-based Swedish citizen, and Sherway, a British Virgin Islands corporation, because "Plaintiff does not assert any actionable conduct that occurred or caused injury in Florida." (Mot. 5).[4]  Plaintiff disagrees, stating the Court may exercise specific personal jurisdiction over Eliasch because the claims arise out of his conduct at the Miami Board meeting, and over Sherway because of the alleged civil conspiracy that was carried out here. (*See generally* Resp.).

The Court examines whether it may exercise personal jurisdiction over Eliasch and Sherway by considering the requirements of the relevant state long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Posner*, 178 F.3d at 1214 (citation omitted).

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

### A. Florida's Long-Arm Statute

Florida's long-arm statute recognizes two kinds of personal jurisdiction over defendants: specific jurisdiction and general jurisdiction. *See* Fla. Stat. §§ 48.193(1)–(2). As Plaintiff does not assert general personal jurisdiction exists (*see* Compl. ¶ 18), the Court addresses only specific personal jurisdiction.

Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a non-resident defendant who engaged in one of the enumerated acts listed in Florida Statute section 48.193(1)(a). *See Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (per curiam) (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203–04 (11th Cir. 2015)). The relevant portion of the long-arm statute states a person may be subject to the jurisdiction of a court in Florida "for any cause of action arising from . . . . [c]ommitting a tortious act within this state."[5] Fla. Stat. § 48.193(1)(a)(2) (alterations added). The Court considers whether it has long-arm jurisdiction under this provision over Eliasch and Sherway in turn.

#### 1. Eliasch

According to Defendants, the Court cannot exercise jurisdiction over Eliasch under the long-arm statute because: (1) as to the tortious interference claim, Eliasch did not commit a tortious act in Florida or have the requisite intent to interfere with Plaintiff's contractual rights (*see* Mot. 16; Reply 2–4); (2) the fraud and negligent misrepresentation claims do not allege Eliasch made

---

[5] In his Response, Plaintiff raises two potential bases for long-arm jurisdiction: the "tortious act" provision or the section that authorizes exercising jurisdiction over any defendant who "personally or through an agent . . . operat[es], conduct[s], engage[s] in, or carr[ies] on a business or business venture in this state[.]" (Resp. 13–14) (quoting Fla. Stat. §§ 48.193(1)(a)(1)) (alterations added). Because the Court finds it has jurisdiction over Eliasch and Sherway under the "tortious act" provision, it does not address whether it also has jurisdiction over these Defendants based on their business activities in Florida.

misrepresentations in Florida (*see* Mot. 16–17); and (3) Plaintiff was not injured in Florida (*see id*. 18). Plaintiff explains the tortious interference claim arises from tortious acts committed in Florida, including voting and abstaining from voting on the proposals at the Miami Board meeting (*see* Resp. 15–17); Eliasch's fraudulent statements and misrepresentations injured Plaintiff in Florida (*see id.* 17); and Plaintiff was in fact injured in Florida (*see id.* 21). Plaintiff also contends there is jurisdiction over Eliasch under the conspiracy theory of jurisdiction. (*See* Resp. 18–20).

The Court is persuaded there is jurisdiction over Eliasch under Florida's long-arm statute because the tortious interference and fraud and negligent misrepresentation claims arise from Eliasch's "tortious acts" in Florida. Because long-arm jurisdiction exists over Eliasch on this basis, the Court does not address whether there also would be long-arm jurisdiction over Eliasch based on the conspiracy theory of jurisdiction.

### a. Tortious Interference

Plaintiff's tortious interference claim arises from Eliasch "committing tortious acts" in Florida. Fla. Stat. § 48.193(1)(a)(2). "For personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida.'" *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 854 F.2d 389, 394 (11th Cir. 1988) (quoting *Watts v. Haun*, 393 So. 2d 54, 56 (Fla. 2d DCA 1981)). This "showing is properly made by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Id*. (quoting *Watts*, 393 So. 2d at 56) (alteration in original).

Plaintiff alleges Eliasch tortiously interfered with his compensation contracts by causing Amanat, PHRL, and PHRGL to breach the Tavakoli Agreement and the Director Compensation Agreement. (*See* Compl. ¶ 102). Eliasch allegedly procured breaches of the Tavakoli Agreement at the Board meeting in Miami by: (1) abstaining from the vote to cancel incentive payments under Schedule Seven, a portion of which was to be directed to Plaintiff under the Tavakoli Agreement; and (2) voting to approve the $200 million in capital calls, which forced out PHRL. (*See id.* ¶ 103). Defendants insist abstaining from a vote is not tortious activity and Plaintiff has not sufficiently alleged that Eliasch voted on the capital call decision. (*See* Mot. 16). Not so.

Plaintiff properly alleges Eliasch voted in favor of the capital call (*see* Compl. ¶ 84), and he presents Eliasch's testimony affirming he voted in favor of the capital call (*see* Pl.'s Eliasch Dep. 93:11–95:5). Contrary to Defendants' assertions, voting and abstaining from a vote may constitute "tortious activity" under the facts alleged because these acts were "essential to the success of the tort." *Williams Elec. Co., Inc.*, 854 F.2d at 394 (quotation marks and citation omitted). Eliasch's actions in voting in favor of the capital call and abstaining from the Schedule Seven vote were essential to these proposals being adopted (*see* Compl. ¶¶ 82–84), and it was these measures that caused the breach of Plaintiff's compensation agreements (*see id.* ¶¶ 102–103, 107).[6]

---

[6] Courts have found voting to be a "tortious act" sufficient to warrant long-arm jurisdiction in cases involving claims of breach of fiduciary duty. *See Siegel v. Marcus*, 980 So. 2d 1272, 1274 (Fla. 4th DCA 2008) (finding personal jurisdiction over non-resident defendant under "tortious act" provision of long-arm statute because he sent his rescission vote to a general partner in Florida, and the alleged conspiracy to breach fiduciary duties arose out of the rescission vote); *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 733 (Tex. App. 2003) (explaining a "breach of fiduciary duty by a corporate director's action of voting at a board meeting occurs in the state where the meeting was held") (citing *Heil v. Morrison Knudsen Corp.*, 863 F.2d 546, 550–51 (7th Cir. 1988))). In addition, courts have found a director can engage in misconduct even where he or she abstained from the vote at issue. *See Frederick Hsu Living Trust v. ODN Holding Corp.*, No. 12108-VCL, 2017 WL 1437308, at *38 (Del. Ch. Apr. 14, 2017) ("[A] court might hold a director

Thus, Plaintiff sufficiently alleges Eliasch's voting and abstaining from a vote were tortious acts. *See Williams Elec. Co., Inc.*, 854 F.2d at 394.

Defendants also assert tortious interference requires an intentional and unjustified interference with a contract, and Eliasch's testimony shows he did not act with the requisite intent. (*See* Reply at 3–4). They emphasize Eliasch's testimony he voted as "an independent director," and "[t]here was absolutely no implied voting direction that [he] had to follow from Mr. Amanat" regarding how to vote at the Board meeting. (Defs.' Eliasch Dep. 46:7–10 (alterations added)).[7] Eliasch also testified he abstained from the Schedule Seven vote because he did not want to become involved in issues between Doronin and Amanat. (*See id.* 49:24–50:3). Yet, resolving the dispute over the exercise of personal jurisdiction does not require the Court to determine whether Eliasch acted with the requisite intent. *See Thorpe v. Gelbwaks*, 953 So. 2d 606, 609 (Fla. 5th DCA 2007) (explaining the court's focus should be on "whether the tort, *as alleged*, occurred in Florida," and not whether the plaintiffs proved the defendant "had actually committed a tort in Florida" (emphasis in original)); *Future Tech. Today, Inc.*, 218 F.3d at 1250 (declining to conduct a "full-scale inquiry" into the merits of conversion claim because a "motion to dismiss for lack of personal jurisdiction does not require such an inquiry").

Defendants do not rebut Plaintiff's jurisdictional allegations this suit arises out of acts that occurred at a Board meeting in Miami, Florida, which interfered with Plaintiff's compensation

---

liable, even if the director abstained from the formal vote to approve the transaction, if the director was closely involved with the challenged [transaction] from the very beginning . . . .") (internal quotation marks and citation omitted; first and third alteration added; second alteration in original).

[7] Eliasch's testimony he was not voting at Amanat's direction does not negate Plaintiff's allegation Eliasch was voting (or abstaining) at Doronin's direction. (*See* Compl. ¶ 80).

agreements. Accepting these allegations as true, the Court finds it has jurisdiction over Defendants under Florida's long-arm statute. *See Sutherland v. SATO Glob. Sols., Inc.*, 17-cv-61596, 2018 WL 3109627, at *3 (S.D. Fla. Apr. 10, 2018).

### b. Fraud and Negligent Misrepresentation

The Court also finds the fraud and negligent misrepresentation claims arise out of Eliasch "committing tortious acts" in Florida. Fla. Stat. § 48.193(1)(a)(2). Plaintiff alleges Eliasch made misrepresentations about why he was investing in PHRL to conceal that he was conspiring with Doronin to gain control of the PHRGL Board. (*See* Compl. ¶¶ 72, 119, 127). Because of the fraud, Plaintiff "received almost none of the economic benefits to which he was entitled." (*Id.* ¶ 121).

Defendants assert the Complaint does not allege any misrepresentations were made in Florida, and instead alleges that Eliasch's statements were made during telephone conversations and at a meeting in London. (*See* Mot. 16–17; Compl. ¶ 72). While Eliasch's statements were not made in Florida, it is not remarkable to conclude these torts were completed because of Eliasch's conduct at the Miami Board meeting. *See Williams Elec. Co., Inc.*, 854 F.2d at 394. Damages are an essential element of both fraud and negligent misrepresentation claims. *See, e.g.*, *Soltero v. Swire Dev. Sales, Inc.*, No. 08-20260-CIV, 2010 WL 11506701, at *2 (S.D. Fla. Apr. 19, 2010). But for the actions taken at the Miami Board meeting, Plaintiff would not have suffered damages from Eliasch's fraudulent statements; the proposals adopted at the Board meeting are what caused Plaintiff not to receive his compensation. (*See* Compl. ¶¶ 120–121, 130–131). Thus, Eliasch's acts in Florida were "essential to the success" of these claims. *Williams Elec. Co., Inc.*, 854 F.2d at 394 (affirming the district court had personal jurisdiction over defendants who negotiated and

executed subcontracts in Florida because "there was no resulting damage" to plaintiff until these acts, so they were "essential to the success of the tort").[8]

c. Plaintiff's Place of Injury

Finally, Defendants argue there is no long-arm jurisdiction because Plaintiff was not injured in Florida. (*See* Mot. 18). They contend the harm Plaintiff suffered is the deprivation of compensation he was promised, and such injury occurred in New Jersey, where Plaintiff resides. (*See id.*).

Florida's long-arm statute only requires a plaintiff's place of injury be Florida if the tortious act was committed *outside* the state. *See Elandia Int'l, Inc.*, 690 F. Supp. 2d at 1329 (explaining that personal jurisdiction may attach under Florida's long-arm statute if "a substantial aspect of the alleged tort" is committed in Florida, *or* it may also attach to a "defendant who commits a tort *outside* of the state that causes injury *inside* the state" (emphasis added)). The cases Defendants rely on required the plaintiff's injury to occur in Florida because the tortious acts were committed outside the state. *See id.* at 1330 (finding personal jurisdiction over defendant, even assuming any tortious conduct he committed occurred outside the state, because he caused the plaintiff to suffer harm in Florida); *see also Focus Mgmt. Grp. USA, Inc. v. King*, No. 8:13-cv-1696-T-35AEP, 2014 WL 12639960, at *5 (M.D. Fla. May 13, 2014) (holding the defendant's alleged tortious

---

[8] The Court also has jurisdiction over the fraud and negligent misrepresentation claims because "[i]f the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event." *Thomas v. Brown*, 504 F. App'x 845, 847 (11th Cir. 2013) (alteration added; citation omitted); *see also Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1341 (S.D. Fla. 2010). As explained, the long-arm statute provides jurisdiction over the tortious interference claim, and the fraud and negligent misrepresentation claims arise from the same event: Plaintiff being cut out of his compensation agreements because of actions taken at the Miami Board meeting.

interference, "although not actually taking place in Florida, is sufficient to satisfy the long-arm because [plaintiff] is a Florida company and the injury resulting from that conduct caused injury to [plaintiff] in Florida" (alterations added)).

Plaintiff need not have suffered his injury in Florida, given a "substantial aspect of the alleged tort" was committed here. *Williams Elec. Co., Inc.*, 854 F.2d at 394; *Watts*, 393 So. 2d at 56; *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645 (Fla. 4th DCA 2013) (explaining Florida's long-arm statute focuses the analysis "not on where a plaintiff ultimately felt damages, but where a defendant's tortious conduct occurred"). Accordingly, the Court may exercise jurisdiction over Eliasch under Florida's long-arm statute.

### 2. Sherway

Defendants contend there is no long-arm jurisdiction over Sherway because Sherway did not commit any tortious acts in Florida. (*See* Mot. 15). They explain "Sherway did not attend the April 22, 2014 Board meeting, did not hold a seat on the PHRGL Board, and thus did not at all participate in the allegedly improper decisions made at that meeting that are at the heart of Plaintiff's claims." (*Id.*). According to Plaintiff, jurisdiction extends to Sherway because Sherway engaged in a civil conspiracy with Eliasch and Doronin, who committed acts in furtherance of the conspiracy in Florida. (*See* Resp. 18–20). Plaintiff's position is well-taken.

"The elements of civil conspiracy in Florida are: (1) an agreement between two or more parties[;] (2) to do an unlawful act; (3) doing an overt act to further the conspiracy; and (4) damage to the plaintiff as a result of the acts done under the conspiracy." *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1312 (S.D. Fla. 2017) (alteration added; citation omitted).

"Florida's long-arm statute supports personal jurisdiction over an 'alleged conspirator where any other co-conspirator commits an act in Florida in furtherance of the conspiracy, even if the defendant over whom personal jurisdiction is sought individually committed no act in, or had no relevant contact with, Florida.'" *Id*. (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1281–82 (11th Cir. 2009)).

Plaintiff sufficiently establishes a prima facie case of jurisdiction over Sherway based on the alleged civil conspiracy. Plaintiff describes the existence of an agreement between Sherway, Eliasch, and Doronin — a Florida resident — to remove Plaintiff from PHRGL and tortiously interfere with Plaintiff's contracts. (*See* Compl. ¶¶ 12, 148). Plaintiff then explains Sherway committed an overt act in furtherance of the conspiracy by investing in PHRL in exchange for PHRL giving Eliasch a seat on the PHRGL Board. (*See id*. ¶¶ 16, 70, 148). Plaintiff also alleges damages resulting from the conspiracy: Eliasch's appointment to the PHRGL Board enabled Doronin to use his control over the Board to remove Plaintiff as a director and eliminate his interests in Aman Resorts. (*See id*. ¶¶ 149–52). Finally, Plaintiff alleges substantial overt acts by Sherway's co-conspirators, Eliasch and Doronin, in Florida: after Sherway invested in PHRL in exchange for giving Eliasch a PHRGL Board seat, Eliasch and Doronin carried out their plan to cut Plaintiff out of the Aman deal by cancelling Schedule Seven and draining PHRL of its assets at the Miami Board meeting. (*See id*. ¶¶ 148–50).

In addition to the Complaint's allegations, Plaintiff's claims Sherway engaged in the conspiracy, and that the conspiracy was carried out in Miami, are supported by Eliasch's testimony. As to Sherway's role in the conspiracy, Eliasch testified he has a 100% ownership

17

interest in Sherway (*see* Pl.'s Eliasch Dep. 9:18–20), and Sherway's investment in PHRL was conditioned on PHRL appointing Eliasch to the PHRGL Board (*see id*. 16:25–17:3). As to the conspiracy being carried out in Miami, Eliasch testified that prior to the Board meeting, he met with Doronin in Miami regarding "matters relat[ed] to Aman Resorts" (*id*. 27:9–25 (alteration added)); received the Board presentation related to the capital call prior to the Board meeting (*see id*. 38:11–19); and voted for the capital call and abstained from the Schedule Seven vote in Miami (*see id*. 73:6–8; 93:11–95:5).

These allegations and evidence are sufficient to establish personal jurisdiction under Florida's long-arm statute. *See Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, No. 06-80966-CIV, 2007 WL 9701852, at *5–6 (S.D. Fla. May 30, 2007) (exercising personal jurisdiction over non-resident because he allegedly conspired with Florida co-defendants who made fraudulent statements in furtherance of the conspiracy); *Energy Source, Inc. v. Gleeko Props., LLC*, No. 10-21162, 2011 WL 3236047, at *6 (S.D. Fla. July 28, 2011) (finding Florida's long-arm statute reached all participants in conspiracy, "even those not otherwise connected to Florida," where some of the co-conspirators were Florida residents and at least some acts in furtherance of the conspiracy were carried out in Florida); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009) (same).

In an attempt to negate Plaintiff's allegations and evidence, Defendants use Eliasch's testimony that he did not have "any agreements" or "informal understandings" with Doronin related to Aman Resorts (Defs.' Eliasch Dep. 90:22–91:4), and Doronin's testimony that he never discussed "cutting Mr. Aman[at] out of the Aman deal with Mr. Eliasch" (2018 Doronin Dep.

CASE NO. 18-21592-CIV-ALTONAGA

31:25–32:4 (alteration added)). But Eliasch's statement that he did not have any agreement with Doronin is not unlike a denial of wrongdoing, which is a legal conclusion. *See Int'l Underwriters AG*, 2007 WL 9701852, at *5 (disclaimer of wrongdoing in affidavit is a mere legal conclusion, not an assertion of fact, and plaintiff is not required to refute conclusory statements (citing *Thorpe*, 953 So. 2d at 611)). Moreover, Doronin's testimony that he never discussed cutting Amanat out of the deal does not refute Plaintiff's allegation that Doronin, Eliasch, and Sherway agreed to cut Plaintiff out of the deal. (*See* Compl. ¶ 148).

Given Plaintiff's descriptions of actions evidencing a civil conspiracy in Miami remain uncontroverted, jurisdiction under Florida's long-arm statute extends to Sherway. *See Landmark Bank, N.A. v. Cmty. Choice Fin., Inc.*, No. 17-60974, 2017 WL 4310754, at *12 (S.D. Fla. Sept. 28, 2017) ("Because Defendants have fail[ed] to dispute the underlying factual allegations that the Defendants engaged in a conspiracy, . . . and the Court ha[s] jurisdiction over the alleged principal act . . . Florida jurisdiction attaches." (internal quotation marks and citations omitted; alterations in original)).

## B. Due Process

In addition to the requirements of Florida's long-arm statute, "[t]he Due Process Clause of the Fourteenth Amendment constrains a [s]tate's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (alterations added; citation omitted). In specific personal jurisdiction cases, the Eleventh Circuit applies a three-part due process test, "which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant

19

'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). In determining whether jurisdiction comports with "fair play and substantial justice," courts consider: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (internal quotation marks and citations omitted). The Court addresses whether jurisdiction over Eliasch and Sherway comports with due process.

### 1. Eliasch

Defendants argue Eliasch does not have sufficient minimum contacts with Florida because he is a Swedish citizen residing in London, he does not own any business or have any officers or agents in Florida, and he does not pay taxes or own real property in Florida. (*See* Mot. 18–19). Defendants assert Eliasch did not purposefully direct his activities to Florida because the fact that the PHRGL Board meeting took place in Miami was "happenstance." (*Id*. 19). Defendants also contend exercising personal jurisdiction over Eliasch would not comport with "fair play and substantial justice" given the burden of defending a lawsuit in Florida would be immense, and Florida does not have any interest in this dispute. (*Id.* 18–19).

20

Plaintiff emphasizes that Eliasch's actions at the Miami Board meeting are at the heart of this case, and by coming to Miami to participate in a critical Board meeting, Eliasch purposefully directed his activities at Florida. (*See* Resp. 22–23). Plaintiff insists exercising jurisdiction is fair because Eliasch's wrongdoing occurred in Florida and litigating in Florida will impose no greater burden than litigating elsewhere in the United States. (*See id*. 24–25).

The Court is persuaded Plaintiff's claims "arise out of" Eliasch's contact with Florida, Eliasch "purposefully availed" himself of the privilege of conducting activities in Florida, and the exercise of jurisdiction comports with "fair play and substantial justice." *Mosseri*, 736 F.3d at 1355 (citations omitted). First, "[a] significant single act or meeting in the forum state has been held sufficient for personal jurisdiction there." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 858 (11th Cir. 1990) (citations omitted; alteration added). Eliasch traveled to Miami for the April 22, 2014 Board meeting, stayed with Doronin at his Miami residence for three to four days around the date of the meeting, had dinner with Doronin in Miami to discuss matters related to Aman Resorts prior to the meeting, and then participated in the PHRGL Board meeting in Miami. (*See* Compl. ¶¶ 80–84; Eliasch Aff. ¶¶ 10–11; Pl.'s Eliasch Dep. 27:9–25, 73:6–8, 93:11–95:5). The decisions made at the Miami Board meeting effectively ousted Plaintiff from the business and were the impetus for this lawsuit. (*See* Compl. ¶¶ 150–52).

This is not like the cases Defendants rely on, such as *Future Technology Today, Inc. v. OSF Healthcare Systems*, where the defendant made one telephone call to the Florida plaintiff but did not come to Florida until after the purported breach. 218 F.3d at 1251. Eliasch "consciously directed [his] activities toward Florida" by coming to Florida for the Board meeting, at which

Defendants' conspiracy was put into effect. *Williams Elec. Co. Inc.*, 854 F.2d at 393 (holding defendants had sufficient minimum contacts with Florida, even though their sole contact with the state occurred when they traveled to Florida to negotiate the terms of two subcontracts, because they "consciously directed their activities toward Florida" and availed themselves of the "benefits and protections of Florida law" (internal quotation marks and citation omitted; alteration added)).

Eliasch also "purposefully directed" his activities at Florida when he conspired with Doronin, a Florida resident. *See, e.g.*, *Int'l Underwriters AG*, 2007 WL 9701852, at *5 ("By allegedly joining and participating in the conspiracy with the knowledge that overt acts in furtherance of the conspiracy would and did take place in Florida, [the] defendant [] purposefully availed himself of the privilege of conducting activities within this State[.]" (alterations added; citation omitted)); *AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1355 (finding nonresident defendants "purposely directed" their activities at Florida because they participated in a conspiracy with co-conspirators who were Florida residents). Although Defendant claims selecting Miami for the Board meeting was "mere happenstance" and Doronin unilaterally decided to hold the meeting in Miami (*see* Mot. 19–20), it is alleged Eliasch knowingly conspired with a Miami resident and chose to travel to Florida to commit tortious acts in furtherance of that conspiracy (*see* Compl. ¶ 148; Eliasch Aff. ¶ 10).

Finally, exercising jurisdiction over Eliasch comports with "'fair play and substantial justice.'" *Burger King Corp*., 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Although Eliasch may be required to travel to Florida to defend this lawsuit, "modern improvements in transportation and communication significantly lessen this hardship."

*Williams Elec. Co., Inc.*, 854 F.2d at 393 (citation omitted). In addition, even though Plaintiff is not a Florida resident, Florida "has a legitimate interest in providing redress for persons inside or outside the state who are injured by tortious activity emanating from this state." *Int'l Underwriters AG*, 2007 WL 9701852, at *6. What is more, Defendants have not shown how the "interstate judicial system's interest in obtaining the most efficient resolution of controversies" would be furthered by permitting the case to be heard in New Jersey or any other forum. *Burger King Corp.*, 471 U.S. at 477 (internal quotation marks and citation omitted). Accordingly, exercising jurisdiction over Eliasch comports with due process.

### 2. *Sherway*

Similarly, Defendants argue the Court cannot exercise jurisdiction over Sherway, a British Virgin Islands corporation, because Sherway does not have offices in Florida; does not have employees, agents, or representatives in Florida; and does not have a bank account, own any real property, or pay taxes in Florida. (*See* Mot. 18–19; *see also* Sherway Aff. ¶¶ 2–8). Sherway also did not attend the PHRGL Board meeting in Miami. (*See* Sherway Aff. ¶ 10). The Court is not convinced.

Plaintiff sufficiently alleges and presents evidence Sherway engaged in a civil conspiracy with Eliasch and Doronin and committed substantial acts in furtherance of the conspiracy in Florida. Sherway's co-conspirators' acts in Florida — cancelling Schedule Seven and authorizing the capital call — could not have occurred without Sherway investing in PHRL in exchange for Eliasch being appointed to the PHRGL Board. (*See* Compl. ¶¶ 69–70, 80–84, 148–51). The acts of the conspiracy in Florida may be imputed to Sherway to establish minimum contacts. *See J &*

*M Assocs., Inc. v. Romero*, 488 F. App'x 373, 375–76 (11th Cir. 2012) (holding a nonresident defendant had minimum contacts with Alabama because his co-conspirators committed an overt act in furtherance of the conspiracy in Alabama); *see also Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 515 F. Supp. 2d 1288, 1294 (S.D. Fla. 2007) ("This Court can then exercise jurisdiction over Mr. Caldas if the contacts of the conspiracy (imputed to Mr. Caldas Sr.) constitute sufficient minimum contacts."); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062, 2016 WL 4256916, at *15 (S.D. Fla. May 16, 2016) (finding minimum contacts satisfied for co-conspirator who did not engage in activities in Florida because "the bulk of the conspiracy took place in Florida" (citing *Smolinski & Assocs., Inc. v. Cont'l Airlines, Inc.*, No. 99-8318, 2000 WL 1100106, at *2 (S.D. Fla. July 25, 2000))).

The Court also finds Sherway "purposefully availed itself of the privilege of conducting activities in Florida by choosing to enter into a conspiracy" with Doronin, a Florida resident. *Diversified Mgmt Sols., Inc.*, 2016 WL 4256916, at *15; *see also Energy Source Inc.*, 2011 WL 3236047, at *6 (finding defendants "purposely directed" their activities at Florida where two of their co-conspirators were Florida residents (internal quotation marks and citation omitted)); *Int'l Underwriters AG*, 2007 WL 9701852, at *5; *AXA Equitable Life Ins. Co.*, 608 F. Supp. 2d at 1355. Exercising jurisdiction over Sherway comports with "fair play and substantial justice" for the same reasons it does as to Eliasch. Defendants have not established that defending this suit in Florida would unduly burden Sherway, and because the alleged tortious conduct occurred in Florida, this state has "a significant interest in resolving this dispute." *Energy Source Inc.*, 2011 WL 3236047, at *7. Therefore, exercising jurisdiction over Sherway is consistent with due process.

## IV.    CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants, Carl Johan Eliasch's and Sherway Group Limited's Combined Motion to Dismiss for Lack of Personal Jurisdiction **[ECF No. 96]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of March, 2019.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record